UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:18-cr-00005-GFVT-HAI-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| DANIEL J. ZULAWSKI, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

A jury found Daniel Zulawski guilty of one count of attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). This Court sentenced Zulawski to 196 months of imprisonment. The Sixth Circuit affirmed his conviction. *See United States v. Zulawski*, No. 20-5577, 2022 WL 247742 (6th Cir. Jan. 27, 2022). Zulawski then filed a motion to vacate under 28 U.S.C. § 2255. Magistrate Judge Hanly A. Ingram issued a Recommended Disposition, recommending that this Court deny Zulawski's motion. Zulawski, through counsel, objected to Judge Hanley's recommended disposition. Because the Court finds that none of Zulawski's objections have merit, the Court overrules his objections, adopts Judge Ingram's recommended disposition, and denies Zulawski's motion to vacate.

**I**

The facts of this case are well-developed on the record and in Zulawski's unsuccessful appeal. *See Zulawski*, 2022 WL 247742, at *1–4. In January 2018, Zulawski responded to a Craigslist posting that sought serious inquiries for a "taboo/incest" sexual tryst. *Id.* at *1. Zulawski began speaking to a person who he thought was a 30-year-old divorced mother. During their initial interaction, the mother stated that she would bring her "11 yo daughter and 13 yo son with me," to which Zulawski responded, "[t]hat sounds like it would be hot =)." [R. 141 at 20].

The mother asked whether Zulawski wanted "all of us" or "just certain ones," to which Zulawski responded, "figure you and me could watch them go at it while we play and then me and ur son use you both?" [*Id.* at 22]. Zulawski further inquired into the children's interest and history participating in such sexual encounters. [*Id.* at 24–25]. They arranged to meet at a Frankfort hotel.

Zulawski was not, however, speaking to a 30-year-old divorced mom, but instead to Detective Heather D'Hondt with the Kentucky Attorney General's office. *Zulawski*, 2022 WL 247742, at *1. Zulawski arrived at the hotel where law enforcement promptly arrested him. The U.S. Attorney's Office charged Zulawski with attempting to entice a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). Zulawski pleaded not guilty and proceeded to trial, where a jury found him guilty. This Court sentenced him to a sentence of 192 months, below the guideline range of 292 to 365 months. [R. 157 at 51–52].

The Sixth Circuit later affirmed Zulawski's conviction on appeal. [R. 164]. Zulawski then filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing ineffective assistance of counsel and that he remains entitled to a *Franks* hearing. [R. 172]. The United States opposed the motion. [R. 190]. Magistrate Judge Hanly A. Ingram issued a recommended disposition of the motion, recommending that Zulawski's motion be denied. [R. 196]. Zulawski, through counsel, submitted an objection to Judge Ingram's opinion.[1] [R. 198]. The matter is fully briefed and ripe for adjudication.

---

[1] Mr. Zulawski retained a different attorney to litigate these claims of ineffective assistance of counsel against his trial attorney. The Court granted a Motion to Withdraw filed by Philip Lawson, Mr. Zulawski's trial counsel, on July 28, 2020. [R. 146]. Mr. Zulawski later retained Robert L. Sirriani as counsel, appearing *pro hac vice*. [R. 175].

2

## II

District courts review objections to a magistrate judge's recommended findings *de novo*. 28 U.S.C. § 636(b)(1)(C). But the Court only need review "those portions of the report or specified proposed findings or recommendation to which an objection is made." *Id.* "The Court need not provide de novo review where the objections are frivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). General objections include those that are only summary in nature and those that dispute the correctness of the magistrate's report but fail to specify the finding in error. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court will not consider objections that fail to identify "specific legal or factual issues from the report" because such a review "duplicates the Magistrate's efforts and wastes judicial economy." *Howard v. Sec. of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Judge Ingram's 39-page recommended disposition made several findings. [R. 196]. Judge Ingram first held that Zulawski is not entitled to a *Franks* hearing because such a claim is barred because he already litigated this question on appeal. [*Id.* at 2–5]. Judge Ingram then addressed Zulawski's ineffective assistance of counsel claims. The majority of Judge Ingram's report meticulously combed through the defendant's nine specific arguments made in favor of his ineffective assistance claim. [*Id.* at 5–37]. Judge Ingram found that each of them failed. Zulawski, through counsel and in just four pages, raised 12 objections to Judge Ingram's report. [*See* R. 198].

As an initial matter, the Court finds that several of Zulawski's objections fail to specify legal or factual issues from the report and constitute general objections. *Howard*, 932 F.2d at 509; *Mira*, 806 F.2d at 637. The collective objections contain just a single citation to caselaw. Several of Zulawski's objections disagree with Judge Ingram's conclusions but do not specify a

3

legal reason or even offer an argument why those conclusions are not sound. The Court highlights this fact because this is not a *pro se* appeal, where the Court would construe Zulawski's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court is not required to conjure Zulawski's arguments or construct the legal basis and reasoning of Zulawski's objections. *See Bassett v. NCAA*, 528 F.3d 462, 437 (6th Cir. 2008) (pleadings and motions "drafted by attorneys are held to a more stringent standard than those drafted by pro se litigants."). That is the role of Mr. Zulawski's counsel.

With this in mind, the Court addresses Zulawski's objections by grouping them into three categories. First, the Court reviews *de novo* Zulawski's objection to Judge Ingram's finding that he is barred from raising his *Franks* hearing issue. Second, the Court notes those objections which fail as being too general or lacking specificity. Third, the Court reviews *de novo* Zulawski's properly raised objections.

## A

The first issue before the Court is whether Zulawski is entitled to a *Franks* hearing. Zulawski claims that he is entitled to such a hearing "due to law enforcement misrepresentation of facts in obtaining a warrant at trial." [R. 172 at 6]. The government argues that this claim is barred as previously litigated. [R. 190 at 16]. Judge Ingram agreed with the government's position, finding that "Zulawski already had the opportunity at the trial court and Court of Appeals to challenge the validity of the search warrant and invoke *Franks*." [R. 196 at 4]. "Even if the *Franks* issue was not previously decided," Judge Ingram continued, "section 2255 relief is also barred when an issue *could have been raised* on appeal." [*Id.*] Zulawski objects, arguing

4

that he "necessarily raises ineffective assistance of counsel claims that implicate this ground. Petitioner believes that the recommended disposition as it pertains to Ground Two is factually incorrect and objects to the finding insofar as it finds that trial counsel's failure does not constitute cause and prejudice." [R. 198 at 1].

A *Franks* hearing allows a criminal defendant, in certain circumstances, to challenge the truthfulness of factual statements made in an affidavit supporting a warrant. In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

The challenged affidavit enjoys "a presumption of validity," *id.* at 171, meaning that the defendant has a heavy burden in making a substantial preliminary showing of a knowing falsehood. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false" and must accompany any attack on the affidavit with "an offer of proof." *Franks*, 438 U.S. at 171. No hearing is required "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause[.]" *Id.* at 171–72.

On appeal to the Sixth Circuit, Zulawski specifically argued that "the district court erred when it denied his request for a Franks hearing and his motion to suppress the contents of the cage phone."[2] *Zulawski*, 2022 WL 247742 at *4. The Sixth Circuit affirmed this Court's denial

---

[2] The "cage phone" references a second cell phone recovered at Mr. Zulawski's home. After Zulawski's arrest, the Army's Criminal Investigative Division visited Zulawski's residence at Fort Campbell. His wife allowed investigators to search the home, where they discovered a cell phone in the garage locked within a cage. Zulawski's

of Zulawski's request for a *Franks* hearing and the corresponding motion to suppress. *Id.* at 5–7. "Absent exceptional circumstances, or an intervening change in the case law," Zulawski "may not use his § 2255 petition to relitigate this issue." *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (citing *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996)). Zulawski argues that he can relitigate the *Franks* hearing issue because he brings new factual grounds attacking the warrants at issue. [R. 194 at 6]. Judge Ingram is correct that Zulawski had the opportunity at trial and on direct appeal to challenge the validity of the search warrants and invoke *Franks*. The Sixth Circuit analyzed this issue and specifically held that Zulawski was not entitled to a *Franks* hearing. *Zulawski*, 2022 WL 247742, at *7.

"It is well-established that a § 2255 motion is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citation modified). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). As Judge Ingram astutely noted, Zulawski makes no such argument. [R. 196 at 5]. Judge Ingram also noted that Zulawski "raises no claim that appellate counsel was ineffective for failing to raise his *Franks* issues." [*Id.*]

The Court denies Zulawski's request for a *Franks* hearing. The Sixth Circuit previously addressed this exact issue, and Zulawski had the opportunity to litigate it before the trial court and before the Court of Appeals. The Court will not entertain Zulawski's request for a third bite at the apple. Zulawski made this argument before both Courts and both courts rejected it.

---

wife told investigators it was Mr. Zulawski's phone and that he had used it before leaving for Lexington. A military magistrate executed a warrant to search and seize this phone. The Attorney General's office conducted a forensic search of the phone which uncovered sexually explicit conversations between an anonymous user and individuals claiming to be minors. *See Zulawski*, 2022 WL 247742, at *2.

Zulawski "objects to the finding insofar as it finds that trial counsel's failure does not constitute cause and prejudice," but nowhere does he explain a legal position in support of this general statement. This is, like many of his other objections, a general disagreement with the magistrate's findings, not a particularized objection articulating how the magistrate erred. Where Judge Ingram already explained why Zulawski cannot relitigate this claim for a *third* time, the Court will not duplicate the Magistrate's efforts and waste judicial economy responding to a generalized two-sentence objection. *Howard*, 932 F.2d at 509.

**B**

Next, the Court will identify and dispense with those general objections raised by Zulawski that do not warrant *de novo* review. As already established, "general or non-specific objection[s] to a report and recommendation is tantamount to no objection at all." *Stamtec, Inc. v. Anson*, 296 F. App'x 518, 520 (6th Cir. 2008). The Court identifies eight of the twelve objections as too general to warrant *de novo* review. The Court will address them in turn.

**1**

Zulawski's third objection reads: "Petitioner objects to the recommended disposition that trial counsel's decision to not pursue the ICAC defense was sound strategy. Petitioner submits that Lawson's strategy was not sound defense strategy as, given the other facts at trial, Lawson's primary defense was lackluster. Thus, a 'hedge' was reasonable." [R. 198 at ¶ 3]. This refers to Zulawski's claim that trial counsel should have capitalized on the fact that investigating detectives allegedly violated Internet Crimes Against Children (ICAC) task force standards. [*See* R. 196 at 8]. Judge Ingram noted in his recommendation that trial counsel Lawson explained in his affidavit that Lawson and Zulawski agreed to not pursue this theory before the jury because it was counterintuitive to the primary defense that Zulawski was actually going to the hotel to

7

rescue the children. [*Id.* at 10; R. 190-1 at 1–2]. This was a reasonable strategic decision and

Zulawski does not contradict Lawson's claim that they agreed on this course. Zulawski's two-

sentence objection blames Lawson for his "lackluster" defense. He is certainly entitled to that

opinion, but it does not form the basis of a particularized objection to Judge Ingram's reasoning,

and Zulawski makes no attempt to argue within the legal framework for raising an ineffective

assistance of counsel claim.

**2**

Zulawski's fourth objection reads:

> Petitioner objects to the recommended disposition that Lawson's
> failure to raise the entrapment defense was reasonable trial strategy.
> (p. 10-14). Petitioner submits that Lawson's strategy was not sound
> defense strategy as, given the other facts at trial, Lawson's primary
> defense was lackluster. Thus, this defense should have been raised.
> Moreover, as the Court notes, Petitioner was entitled to raise this
> defense and it would not have undermined Lawson's primary
> strategy. As such, the recommendation contains contradictions and
> inconsistencies. There is merit to the entrapment defense and raising
> it would not have undermined the primary defense, as a matter of
> law. Seemingly, there is not reasonable trial strategy for not raising
> it.

[R. 198 at ¶ 4]. As in Objection #3, Zulawski takes issue with Lawson's trial strategy, but he is

unable to or refuses to apply it to any legal test. Zulawski and Lawson discussed raising

entrapment as a defense. [R. 190-1 at ¶ 3]. Judge Ingram painstakingly walked through the

elements of entrapment, applied them to the facts of Zulawski's case, and concluded that

Lawson's strategic decision to not raise an entrapment defense was a reasonable one. [R. 196 at

10–14]. Without so much as even attempting to apply the facts to a case—any case—Zulawski

concludes that Lawson's strategy was "lackluster" and simply disagrees with Lawson's strategic

decision to not raise the entrapment defense. The Court finds no reason to review this

unsupported objection as anything other than a disagreement with Judge Ingram's ultimate conclusion.

**3**

Zulawski's fifth objection reads: "Petitioner objects to the finding on Page 13 that incest would generally mean children in this situation. Just because the ad mentioned a mom and incest, does not mean that Petitioner initiated a conversation involving sex acts with minors. Rather it was D'Hondt that steered the conversation this way." [R. 198 at ¶ 5]. This is both a general objection and one that the record flatly contradicts. D'Hondt first chatted that "I'm [sic] bring my 11 yo daughter and 13 yo son with me," to which Zulawski responded, "that sounds like it would be hot =)" and later explicitly stated how he would like to sexually engage both the mother and the minor children. [*See* R. 141 at 20, 22]. Judge Ingram is correct that a reasonable reader would conclude that the "guests" of a "taboo/incest mom" describing herself as 30 years old would likely be minor children. And even if incest would not generally mean children in the situation, it is completely immaterial where Zulawski continued engaging the mom about sexual activity with her minor children, relevant to the charge that the jury ultimately convicted him of. It is further immaterial because Zulawski makes no attempt to explain the ultimate impact that his proposed objection, if adopted, would have on his ineffective assistance of counsel claims.

**4**

Zulawksi's seventh objection reads:

> Petitioner objects to the recommendation that the ground involving Lawson's failure to seek an expert (in this case Dr. Smith) does not constitute ineffective assistance of counsel. (p. 17-19). Without further inquiry by Lawson and investigation into Dr. Smith during the discovery and trial phase, rather than during sentencing, it would have provided that, in light of Dr. Smith's or any other expert, the elements of the charged offense would have been negated.

9

[R. 198 at ¶ 7]. This objection can be quickly dismissed by the fact that Lawson did consider the question of whether to retain an expert, and in fact did retain one for sentencing. As Judge Ingram explained, however, the primary trial strategy involved pursuing the "white knight" defense, not a defense of insatiable sexual urges or other mental illness. Zulawski further provides no argument in his objection detailing why Judge Ingram's finding is legally incorrect. This is a wholly conclusory objection: Zulawski provides a bare recitation arguing that the magistrate's recommended finding is wrong. But, once again, Zulawski does not explain or even feign an attempt at rebutting Judge Ingram's analysis.

**5**

Zulawski "objects to the recommendation that the jury instruction issue should fail. (p. 29-30). Petitioner submits that the fact that there is no relation between the mother or fictitious children is outcome determinative." Zulawski claims that trial counsel should have fought for a change in the language of the jury instructions, specifically as it related to the instruction defining enticement of a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). Judge Ingram explained that,

> Under the instructions, Zulawski was charged with attempt "to persuade, induce, or entice, an individual under the age of 16 to engage in unlawful sexual activity." D.E. 100 at 15. Under the government's theory as to criminal incest, Zulawski was attempting to, through the "mom," induce children into committing incest *with the mom*. In other words, it was legally possible for Zulawski to directly commit the crime of attempting to induce or entice a child to commit incest *with someone else*. This is because he was still attempting to entice a child to engage in unlawful sexual activity. Section 2422(b) provides punishment for anyone who, using *e.g.* the phone or internet, "knowingly persuades, induces, entices, or coerces any [minor] to engage in . . . any sexual activity *for which any person can be charged with a criminal offense*." 18 U.S.C.A. § 2422(b). The statute does not require the "unlawful sexual activity" to have occurred directly between the minor and the defendant. Instead, to be liable, the defendant must entice a minor to engage in

> unlawful sexual activity "for which any person can be charged." Here, the person who could have been charged with incest was the alleged mother. There was nothing wrong with the jury instructions.

[R. 196 at 30–31]. Zulawski initially argued that because "[p]etitioner is of no relation to the 'mother' or fictional 'children,' incest is legally impossible as applied to him." [R. 172-1 at 14]. But in the objection, Zulawski now argues that it is the relationship between the mom and the children that matters, not Zulawski's relationship to the mother or the children.

This newly raised argument has no merit. The Sixth Circuit has clearly held that convictions for the attempted solicitation of "a minor 'involves' a minor no matter whether it arose from a sting operation (as here) or it related to a real child." *United States v. Fortner*, 943 F.3d 1007, 1009 (6th Cir. 2019). "[Zulawski]'s attempt involved a minor because the intended victim of the offense was a minor." *Id.* at 1010. Similarly, the attempted solicitation of a mother to engage in incest with her minor children "involves" that illicit activity no matter even it arose from a sting operation. Zulawski's objection is both general in response to Judge Ingram's analysis and different from the original argument raised in his motion. *See* [R. 176-1 at 14–15].

**6**

Zulawski "objects to the finding that the failure to suppress the post-arrest statements were helpful to his defense. (p. 31). *Dassey v. Dittmann*, 877 F.3d 297 (7th Cir. 2017)." Again, Zulawski objects to Judge Ingram's finding without explaining why Judge Ingram's finding is legally incorrect. The main trial strategy rested on the idea that Zulawski was going to rescue the children once he arrived at the hotel. His post-arrest statements actually reinforced this strategy, and in context suppressing them would have been nonsensical. Helpfully, this objection includes Zulawksi's only citation to caselaw. Unhelpfully, he does not explain why an opinion from the Seventh Circuit applies to his case, what rule it purports to stand for, or what the Court is to

11

make of this citation in context. This citation makes even less sense given that the Seventh Circuit in *Dassey* reversed a district court's grant of habeas relief.[3] *Id.* at 318. At any rate, this objection does not specify *why* Judge Ingram erred in his application of the law. Zulawski does not address any of Judge Ingram's analysis, instead merely regurgitating the general theme of his entire "objection"—that Judge Ingram got it wrong without explaining why. Accordingly, this general, unspecific objection does not warrant *de novo* review.

**7**

For his eleventh objection, Zulawski simply states: "Petitioner objects to the recommendation and findings regarding the Google Pixel Chats." [R. 196 at ¶ 11]. Without any basis suggesting *why* Zulawski objects to the findings or how Judge Ingram misapplied the law, the Court dismisses this as a general objection.

**8**

Zulawski "objects to the recommendation that trial counsel's strategy of having the jury fall for an inferential fallacy is sound trial strategy. (p. 36). Petitioner also objects to the recommendation that there was no improper variance. (p. 37)." [R. 198 at ¶ 12]. Here, Zulawski disagrees with Judge Ingram's analysis holding that trial counsel's strategic decision was sound. Trial counsel partly based the defense on an argument that the lack of any child pornography on Zulawski's electronic devices supported Zulawski's testimony that he may have engaged in sexual conduct with adults but was not otherwise interested in or predisposed to engage in sexual activity with minors. *See* [R. 196 at 35–36]. At no point, however, did trial counsel "confuse" the

---

[3] In *Dassey*, the Seventh Circuit concluded that a prior state court's decision, finding that Dassey's confession was voluntary, was not an unreasonable application of Supreme Court precedent. 877 F.3d at 312–315. This Court is unable to decipher Zulawski's intended effect in citing this case. This further supports a finding that this objection is too general and conclusory to warrant *de novo* review. The Court sees no sense in replicating the work already ably performed by Judge Ingram.

12

elements of the crime charged in the indictment, which did not require possession of child pornography. This was merely a calculated decision to sow doubt in the minds of the jury as to Zulawski's intent to commit the charged crime. Trial counsel did not misunderstand the elements; instead, he engaged in a well-known trial tactic used by defense attorneys everywhere. Judge Ingram noted in his recommended disposition that trial counsel did not fall for an inferential fallacy, but rather that he "was trying to get *the jury* to fall for the inferential fallacy," and concluded that "this was a reasonable strategic maneuver in light of the defense theory." [*Id.* at 36].

Zulawski disagrees with Judge Ingram's well-articulated conclusion that this was a reasonable litigation strategy. Yet again, Zulawski makes no attempt to describe how this was an improper strategy or otherwise rebut Judge Ingram's findings. Zulawski's "objection" regarding the improper variance is similarly lacking, especially considering that Judge Ingram had to infer in the first place what Zulawski sought to argue. *See* [*id.* at 37]. Even when given the opportunity to further develop this argument in his objection brief, Zulawski fails to offer anything more than a general disagreement with Judge Ingram's finding.

For the reasons aforementioned, the Court construes Objections 3, 4, 5, 7, 10, 11, and 12 as general objections. General objections merely restating arguments already made carry the same effects as would a failure to object. *Cary v. Kirtida Patel*, No. 2:24-cv-10193, 2025 U.S. Dist. LEXIS 141012, at *6 (E.D. Mich. July 23, 2025) (citing *Howard*, 932 F.2d at 509). These collective objections constitute a pattern where Zulawski identified specific parts of the recommended disposition with which he disagreed, but did not adequately state or explain his basis for that objection. Having reviewed Judge Ingram's recommended disposition, the Court is

satisfied that Judge Ingram's conclusions are correct and his legal reasoning sound and well-supported.

C

For the reasons stated above, eight of the twelve objections are too general to warrant de novo review by this Court. The Court already reviewed Zulawski's objection to "Ground Two," his *Franks* hearing request, and found he is not entitled to a *Franks* hearing. That leaves three remaining claims. These objections contain the pleading deficiencies present in Zulawski's other objections. The Court, however, finds that he articulates just enough information permitting the Court to construe the objections as specific, rather than general, and warranting *de novo* review under 28 U.S.C. § 636(b)(1)(C).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. But the mere presence of counsel is not enough. The Supreme Court has established that the Sixth Amendment's "right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). In 1984, the Supreme Court announced a new test for evaluating ineffective assistance of counsel claims where the defendant argues that their attorney failed to render adequate legal assistance. "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient "when counsel makes an error sufficiently grave that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012) (citation modified). "Second, the defendant must show that the deficient performance prejudiced the defendant." *Strickland*, 466 U.S. at 687. To satisfy the prejudice element, the defendant "must prove that there is a

14

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 681 F.3d at 760. The defendant must make both showings.

The Sixth Circuit's treatment naturally follows from *Strickland*. Defendants must show that their counsel provided deficient performance that prejudiced the defense. *Hodge v. Plappert*, 136 F.4th 648, 659 (6th Cir. 2025). Courts are not to second-guess counsel's performance based on well-reasoned strategic choices. *Jackson*, 681 F.3d at 760. As such, the Court begins with a strong presumption that Zulawski's trial counsel, Philip Lawson, gave reasonable professional assistance and asks only whether Lawson made objectively reasonable decisions. *DeBruyn v. Douglas*, No. 24-1905, 2026 WL 617926, at *4 (6th Cir. Mar. 5, 2026). It is not enough for the Court to find that that Mr. Lawson failed to make objectively reasonable decisions. Zulawski must also prove a "substantial, not just a conceivable, likelihood that, but for his lawyers' performance, he would not have been convicted at trial." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

**1**

With this framework in mind, the Court turns to Zulawski's second objection. Zulawski

> objects to the recommended disposition that no ICAC violation occurred. At one point in the recommendation, it is noted that the undercover agent introduced the idea of minors to the conversation. But later, the recommendation notes that Petitioner was not steered into a discussion of sex acts with children. Petitioner submits that both of these statements in the recommendation cannot be true and that an ICAC violation occurred. (p. 8-9).

[R. 198 at ¶ 2]. Here, Zulawski calls into question the logic of Judge Ingram's proposed findings. Zulawski, in other words, articulates *why* he believes Judge Ingram erred in making this determination, which is precisely what the triggers *de novo* review under 28 U.S.C. § 636(b)(1)(C).

Zulawski claims that Lawson "unduly prejudiced him by failing to raise Internet Crimes Against Children (ICAC) Task Force Standards violations committed by Detective D'Hondt." [R. 172-1 at 5]. The gist of Zulawski's argument is that the Standards prohibit law enforcement from steering an online conversation toward illegality when an individual otherwise has no predisposition toward that illegality. [*Id.*] Zulawski argues that D'Hondt violated these standards by steering the conversation toward sexual activity with children. [*Id.*] The government, in response, argues that no ICAC violation took place because Zulawski clearly engaged himself in these discussions with minimal "steering" from Agent D'Hondt. [R. 190 at 6–8]. As Judge Ingram noted, the Sixth Circuit's recitation of the facts supports the government's position. *See Zulawski*, 2022 WL 247742, at *1–2.

It is not enough for Zulawski to simply claim that D'Hondt violated the task force standards. He has to articulate why Lawson's failure to pursue this point rises to the level of ineffective assistance of counsel. Lawson explained his reasoning as to this issue in his affidavit:

> Throughout the defense and trial of this matter, Defendant repeatedly claimed that it was not his intention to elicit illegal sexual acts from the undercover officer posing as a mother with minor children. Instead, he claimed he was on a rescue mission to save the mother and children. Therefore, as a matter of fact, to question the officer at trial regarding her tactics was counterintuitive at trial since every statement was intentional to Defendant to achieve his objective. To claim coercion while, at the same time, claiming the statements were intentional to lure the mother to a meeting to save her and the children was a "hedge" that Defendant and I discussed being potentially prejudicial in the eyes of the jury. Given his defense and objective, which was acquittal, Defendant and I agreed that it was best not to raise this fact issue.

[R. 190-1 at 1]. He also concluded that there was no good faith basis to move to exclude the statements based upon an alleged violation of ICAC standards. [*Id.*]

16

The U.S. Code requires a state's ICAC task force to "establish or adopt investigative and prosecution standards, consistent with established norms, to which such task force shall comply." 34 U.S.C. § 21114(7). The Justice Department publishes "Operational and Investigative Standards" for ICAC. *See* [R. 172-2 at 4–17]; *see also Internet Crimes Against Children Operational and Investigative Standards*, Citizens Against Government Entrapment (Sep. 12, 2017), https://perma.cc/L5MR-4VKQ. Section 8.6 of these standards states that "[a]bsent prosecutorial input to the contrary, during online dialogue, officers shall allow the Investigative target to set the tone, pace, and subject matter of the online conversation." [*Id.* at 16]. Zulawski pairs the ICAC language with the holding from *Sorrells v. United States*, 287 U.S. 435 (1932), the Supreme Court case that first recognized the entrapment defense under federal criminal law. "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). Zulawski's ICAC claims boil down to his belief that Lawson should have presented an entrapment defense alongside the primary "white knight" defense. Lawson and Zulawski chose to not pursue the entrapment defense, in large part because it would not make sense to claim coercion while simultaneously claim that he *was* engaging in these chats in order to set up a rescue plan.

Deficient performance under *Strickland* means that Lawson's representation fell below an objective standard of reasonableness. *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir. 2013). There is a strong presumption that Lawson's counsel fell "within the wide range of reasonable professional assistance," *Bell v. Cone*, 535 U.S. 685, 702 (2002), and it is well-established that defense counsel need "not pursue every claim or defense, regardless of its merit, viability, or

realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Lawson's actions were entirely reasonable in light of Zulawski's repeated claims that he did engage in sexually explicit conversations, but only in order to save the children from the actions of their mother. It is objectively reasonable, in light of Zulawski's own professed version of events and decision to pursue a white knight strategy attacking the intent element, to decide against presenting an alternative defense that could potentially prejudice Zulawski in the eyes of the jury. Accordingly, Lawson did not perform deficiently simply because he reasonably determined to advance a defense based on Zulawski's own version of events rather than pursuing every alternative defense with no regard to its merit, viability, or realistic chance for success.

Even if Lawson performed deficiently by not raising the ICAC issue as part of an entrapment defense, Zulawski was not prejudiced by this failure. To show prejudice, Zulawski must show that there is a reasonable probability that, but for Lawson's deficient performance, the result of the proceeding would have been different. *Harrington*, 562 U.S. at 104. A reasonable probability requires more than simply claiming that "errors had some conceivable effect on the outcome of the proceeding." *Id.* Zulawski does not address the prejudice prong as to his ICAC claim in either his motion or his response, other than to say that his arrest "would likely not have occurred if D'Hondt adhered to the ICAC standards[.]" [R. 172-1 at 7].

The Court cannot agree with Zulawski's characterization. The conversation between Zulawski and D'Hondt shows that D'Hondt was the first to introduce the topic of minors, but Zulawski clearly took the initiative and drove the conversation. Zulawski made the first move by responding to a Craigslist ad for a "Taboo/incest mom in Lex for 2 days only." [R. 141 at 17]. Responding to the ad, Zulawski wrote "absolutely love incest and have always had an interest in seeing it or experiencing it for real," before giving out his contact information. [*Id.* at 18].

18

D'Hondt responded simply with "30yo mom. I've got 2 kids with me 11 yo daughter and 13 yo son." [*Id.*] After they began speaking, D'Hond't asked, "what's your ages," to which Zulawski responded he was 25. [*Id.* at 19]. D'Hondt clarified, "I meant that you're interested in lol. I'm bring my 11 yo daughter and 13 yo son with me." [*Id.* at 20]. In response, Zulawski said "that sounds like it would be hot =)." [*Id.*] Zulawski later steered the conversation towards actually meeting up, asking "so what/how/where would you like to do this[.]" [*Id.* at 21].

The Court is not convinced that D'Hondt "violated" the ICAC standards, given Zulawski's clear interest, repeated requests to schedule a meet-up, and repeated inquiries into the children and their interest in the proposed meet-up. In turn, the Court does not find that the hypothetical introduction of a questionable ICAC standard violation would have had any mitigating effect on the jury's decision to convict Zulawski. The Court struggles to think of, and Zulawski does not explain how, the result of the proceeding would have been different if Lawson chose to pursue this strategy. *Harrington*, 562 U.S. at 104. Accordingly, the Court overrules Zulawski's second objection.

**2**

The Court next turns to Zulawski's sixth objection to Judge Ingram's recommended disposition. Zulawski claims that Lawson failed "to investigate or call defense witnesses or to investigate and review discovery documents" as they related to an "exculpatory" report on the cage phone found during the search of his home. [R. 172-1 at 9]. Judge Ingram's description of this claim bears repeating:

> According to Zulawski, there was a report about the "cage phone" that was "exculpatory." The cage-phone report contained texts from "Matt" or "anon," which the government argued were from Zulawski. According to his memo, Zulawski told counsel that some other person may have been sending these texts using Zulawski's account. Zulawski further says that in May 2015 he submitted a

19

> report to Facebook administrators that someone had been accessing his account. D.E. 172-1 at 9. Zulawski argues counsel should have pursued and utilized this information in support of the defense.
>
> Zulawski goes on to say that a person named James Cauthen had met "Matt" on two occasions, and "Matt" was clearly a different person. Zulawski faults counsel for not calling Cauthen to testify. Zulawski says data from Kik and Comcast could also cast doubt on whether he was "Matt." D.E. 172-1 at 10.
>
> In sum, Zulawski argues that all the above information could have been useful in his suppression hearing and at trial to increase his credibility. D.E. 172-1 at 10-11.

[R. 196 at 15]. As the government points out, however, Zulawski admitted to possessing and using the cage phone and Lawson elicited testimony that other individuals had access to the phone. [*Id.*; R. 190 at 9]. Indeed, Lawson moved unsuccessfully to suppress some of the chats. [R. 190 at 9–19].

Zulawski, however, argues that this was not enough. He claims that Lawson was deficient for failing to pursue these points. Zulawski does not explain how this purported deficiency prejudiced him, other than to conclude that "this exculpatory material . . . would greatly increase Mr. Zulawski's credibility and would have been reasonably likely to change the outcome of the jury's verdict." [R. 172-1 at 11]. In his recommended disposition, Judge Ingram noted that Lawson was aware of the cage phone reports and that the name "Matt" barely registered in testimony before the jury and constituted a tiny part of the government's case. [R. 196 at 15–16]. Judge Ingram concludes that "there were multiple other cell-phone messages more clearly linked to Zulawski (including ones containing his picture) that were reflective of his intent to engage in sexual activities with persons under eighteen." [*Id.* at 16].

Zulawski objected to Judge Ingram's recommended findings. He wrote that he

> objects to the recommended disposition that Lawson's failure to investigate witnesses and facts does not rise to ineffective assistance

20

> of counsel. (p. 15-18). Particularly, the statement that – "As a matter of strategy, the fact that Zulawski was alerting people to potential Facebook hacking could cut the other way and provide evidence Zulawski was vigilant in protecting his online identity" – is contrary to the principles of habeas corpus relief. This blanketed, conclusory note not only fails to provide deference to Petitioner and the facts of the case, it pulls out of thin air a notion that is hypothetical and prejudicial. Moreover, Petitioner objects that the "Matt" messages do not constitute deficient performance. (p. 16). Without the Matt messages there is no reflection of Petitioner's mens rea.

[R. 198 at 2–3]. Zulawski raises specific objections to Judge Ingram's findings that call into question the ultimate conclusion reached by Judge Ingram. This objection warrants *de novo* review.

This claim relates to Zulawski's claims for ineffective assistance of counsel. In turning to these claimed deficiencies, the Court is mindful that "a defendant has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)). "The test for ineffectiveness is not whether counsel could have done more; it is merely whether counsel did enough." *Neuhard v. United States*, 119 F.4th 1064, 1070 (6th Cir. 2024). Zulawski's claim is simply one that counsel could have done more.

The Court first asks whether Lawson's representation was deficient in refusing to fully exhaust the arguments as to the identities of "Matt" and the other cage phone report data. In Zulawski's opinion, there was highly exculpatory information that could have been used to enhance his credibility. Lawson's affidavit recounted the strategic decisions made as to this information. *See* [R. 190-1 at ¶¶ 6–20]. Roughly 2.5 years before the indictment, Zulawski sent a text message to others warning them to "be vigilant and use caution when interacting with others on social media," and claiming that someone had made a fake social media profile using his pictures. [*Id.* at ¶ 6]. How this piece of information would be relevant to Zulawski's defense for

the charged crime is unclear. Zulawski admitted to law enforcement officers that he had engaged in the chats leading to his arrest but only did so to rescue the children.

Lawson described that the Government admitted only five cage phone text messages at trial. [*Id.* at ¶ 8]. Three of the exhibit messages contained a photo of Zulawski. [*Id.* at ¶¶ 9–11]. Four of these messages included conversations with "anon," confirmed to be Zulawski through photos. [*Id.* at ¶ 13]. Only one exhibit referenced "Matt" as one of the individuals. Police discovered the phone in a locked cage in the garage of Zulawski's home.

Lawson did not ignore the report, as Zulawski claims, but advanced a defense largely capturing the spirit of what Zulawski now claims he should have done. Lawson elicited testimony that individuals engage in sexual conversations over text, that this practice is common, and that this practice on its own does not prove that he was speaking to minors. [*Id.* at ¶ 16]. Lawson showed that the government could not prove whether Zulawski ever met with these people and that the government could not verify whether any of these people were minors. [*Id.* at ¶ 17]. Lawson elicited testimony showing that Zulawski's ex-wife and another individual, Ken Pinlack, had means and motive to access the phone during the investigation and alter the contents of the phone. [*Id.* at ¶ 18]. Reflecting on this evidence, Lawson reported that "there were no other options regarding how best to address the contents of the cage phone" in light of the strategy to "distance him from the phone as well as undermine the premise that the text messages included minors." [*Id.* at ¶¶ 20, 15].

The strategic decisions of trial counsel are entitled to a strong presumption of reasonableness. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). "Trial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy." *Carson v.*

22

*United States*, 3 F. App'x 321, 324 (6th Cir. 2001). Zulawski fails in both his original motion and in his objection brief to overcome this presumption. First, Zulawski insists that Lawson's failure to "investigate this exculpatory information . . . prejudiced [the] defense at trial by leaving unsupported his innocence claims regarding the influential 404(b) evidence." [R. 172-1 at 10]. The record negates this insinuation. Lawson *did* address these arguments, including by calling witnesses and by poking holes in the government's theory of the evidence.

The Sixth Amendment does not guarantee Zulawski a successful defense; it guarantees him reasonably effective assistance under the circumstances. *Crehore v. United States*, 127 F. App'x 792, 796 (6th Cir. 2005). The contents of the cage phone were, at some level, damning to Zulawski's white knight defense because they suggested that he harbored such ignoble proclivities. Faced with this evidence, trial counsel performed admirably by endeavoring to soften the blow of the text messages. Lawson did not "leave unsupported" Zulawski's innocence claims, he advanced them. Zulawski fails to show that this constitutes deficient performance.

Even assuming that Lawson's decision constituted a deficiency, the Court is fully convinced that it was not prejudicial. The evidence in question made up a tiny part of the government's case. It had little bearing on the events in question leading to Zulawski's arrest. The mens rea requirement for a conviction under 18 U.S.C. § 2422(b) is "knowing," meaning that Zulawski had to know that that the object of his persuasion, inducement, enticement, or coercion was a minor. *See United States v. Buddi*, 168 F.4th 439, 446 (6th Cir. 2026). Even if Lawson managed to exclude all evidence of the cage phone, the government would still have been able to prove the "knowing" mens rea requirement solely through the conversations between Zulawski and D'Hondt. Consequently, the prejudice element is unmet.

23

**3**

The Court also addresses Zulawski's eighth objection:

> Petitioner objects to the recommendation that no prosecutorial misconduct occurred and counsel was not ineffective for failing to challenge it. (p. 19-28). First, the Court's analysis of the "to catch a predator" line is unfounded. To Catch a Predator is an extremely popular TV series in which child predators are put on camera and caught in the act. The prosecution's use of this analogy necessarily calls Petitioner a predator. Likewise, the Prosecution patently tells the jury that Petitioner is liar and conniver. The statements in bold noted in the recommendation show this and constitute prosecutorial misconduct. Petitioner submits that all statements mentioned did rise to the level of misconduct and were so egregious that they infected trial and trial counsel was ineffective for failing to challenge them.

[R. 198 at ¶ 8]. Zulawski's original claim, put simply, is that the prosecutors committed prosecutorial misconduct and Lawson failed to object to it. As noted by Judge Ingram, Lawson did not address these claims in his affidavit. The detail of Zulawski's objection to Judge Ingram's recommended disposition triggers de novo review.

Zulawski must "establish that but for the alleged error of his trial counsel in not objecting . . . assuming the prosecutor committed misconduct . . . there is a reasonable probability that the result of the proceeding would have been different." *Smith v. Jones*, 326 F. App'x 324, 327 (6th Cir. 2009) (quoting *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001)). The challenged statements fall into three categories. First, Zulawski argues that the prosecutors "repeatedly and directly accused [Zulawski] of lying to the jury" in closing argument. [R. 172-1 at 12]. Second, he asserts that the prosecutor "made blatant criminal propensity" arguments and "prejudicially infer[ed] criminal propensity from a showing of lawful conduct." [*Id.* at 12–13]. Third, he takes issue with the prosecutor's references to the TV show "To Catch a Predator" made during voir dire and in the government's opening statement. [*Id.* at 13].

24

"A failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel." *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005). In evaluating claimed prosecutorial misconduct, the Court looks to whether "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). This is a "general standard" that gives reviewing courts "considerable leeway in resolving such claims on a case-by-case basis." *Id.* (citing *Parker v. Matthews*, 567 U.S. 37, 48 (2012)). The defendant has a high bar to clear in order to win a prosecutorial misconduct claim. "It is not enough that the prosecutors' remarks were undesirable or even universally condemned," but rather whether the prosecutors' comments "infected the trial with unfairness." *Darden*, 477 U.S. at 181. The Sixth Circuit notes that a district court's "curative instructions about credibility determinations" can stave off due process concerns. *Stewart*, 867 F.3d at 639. It is undisputed that the Court instructed the jury on the credibility determinations. *See* [R. 100 at 8, 20, 21].

Zulawski takes issue with some of the prosecutor's comments that, in his view, accused him of lying to the jury. [R. 172-1 at 12]. Specifically, he reproaches the prosecutor for stating that certain 404(b) evidence showed his state of mind "before he had any motive to spin or lie about what happened," and the prosecutor's statement that "he thought he could . . . come here and persuade you of this convoluted story." [*Id.*] Zulawski also faults defense counsel for not objecting to the prosecutor's statements that Zulawski "tried to build an innocent story" that "ultimately falls apart." [*Id.*] None of these statements come close to clearing the high bar required for a prosecutorial misconduct claim.

25

Our judicial system is adversarial, and the adversary system requires the prosecutor to "prosecute with earnestness and vigor." *Berger v. United States*, 295 U.S. 78, 88 (1935). Naturally, "hard blows" cannot be avoided in criminal trials. *Herring v. New York*, 422 U.S. 853, 862 (1975). All of the prosecutor's statements were in bounds. "The prosecution may imply that a defendant is lying during its closing argument so long as the prosecutor emphasizes the discrepancies between the defendant's testimony and the record." *United States v. Stover*, 474 F.3d 904, 916 (6th Cir. 2007). "A prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as the comments are not overly excessive[.]" *Key v. Rapelje*, 634 F. App'x 141, 149 (6th Cir. 2015). Zulawski opened this door by defending that he was not going to the hotel to engage in illegal sex acts with minors, but that he was going to rescue the minors. The government, not unexpectedly, presented evidence during that this position had no merit and made statements in closing argument to that effect. This is entirely permissible, as the prosecution "necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009).

Even assuming *in arguendo* that these statements were not linked to the evidence, they would not constitute an "exceptional circumstance in which the error is so plain that the trial judge and prosecutor were derelict in countenancing it" because the prosecutor never called Zulawski a liar directly. *See United States v. Joiner*, 727 F. App'x 821, 825–26 (6th Cir. 2018) (citing *Stover* for the proposition that it is permissible for a prosecutor to suggest that a defendant's testimony is not credible but cannot say "he is a liar."). In the context of his ineffective assistance of counsel claim, Zulawski cannot show that Lawson's failure to object to

26

these statements constituted deficiency or prejudice.[4] The Court agrees with Judge Ingram that the prosecution made a permissible argument that their theory was more credible than Zulawski's. [R. 196 at 24].

Second, Zulawski argues that Lawson failed to object to the prosecutor's allegedly improper criminal propensity arguments. "A fundamental rule of evidence is that a defendant's 'bad character' cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime." *Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir. 2000) (citing Fed. R. Evid. 404(a)). "When a prosecutor dwells on a defendant's bad character in this prohibited manner, we may find prosecutorial misconduct." *Id.* (citing *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir. 1979)). But a prosecutor may admit such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[5] Fed. R. Evid. 404(b)(2).

The government moved to admit such "other acts" evidence in this case. In their 404(b) Notices, the government informed the Court and Zulawski that it intended to present evidence at trial that the Defendant engaged in sexually explicit online chats with minor females, relying on information found on the cage phone. [R. 62; R. 79]. The government's Rule 404(b) theory rested on motive and intent; namely, that Zulawski had motive and intent to engage in this type of criminal activity when he chatted with Detective D'Hondt. [*Id.*] Lawson filed pre-trial

---

[4] "Generally, courts afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole," and "prosecutors are also allowed to forcefully assert reasonable inferences from the evidence." *United States v. Braswell*, 704 F. App'x 528, 538 (6th Cir. 2017) (citation modified). As an experienced litigator, Lawson would be aware of the general principle that lawyers do not commonly object during closing argument absent egregious misstatements and that a decision to not object during closing argument is within the wide range of permissible professional legal conduct.

[5] A prosecutor may do so only after "providing reasonable notice" to the defendant, such that the "defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3). It is undisputed that the government provided this notice. [R. 62].

motions *in limine* to exclude these cage phone chats. [R. 63, 68]. At trial, the Court allowed the text messages to come in but restricted the scope of the messages that the government could show the jury.[6] [R. 155 at 123]. Rather than showing entire conversations, the government could only show "this exchange regarding age, but nothing else." [*Id.*]

Zulawski's contention—that Lawson failed to fight the introduction of this evidence, or to object to its introduction during trial—is not accurate. Zulawski and the government stipulated that the text messages at question came from the cage phone found in his home. [R. 77]. Given this fact, the most Lawson could accomplish was to suppress the text messages. The government properly provided notice of its intent to introduce Rule 404(b) evidence, which Lawson opposed. Lawson filed motions *in limine* to exclude the messages found on the cage phones. This is exactly what a reasonably competent attorney would do when facing such a situation. Consequently, Zulawski cannot make out the deficiency prong of the *Strickland* test for ineffective assistance of counsel concerning his belief that Lawson's supposed "failure" to object to the introduction of this evidence.

Zulawski fails to make out the prejudice prong of the *Strickland* test. Even assuming *in arguendo* that the prosecution made a few criminal-propensity arguments, it is not the case that but for these comments the result of the proceeding would have been different. "Overwhelming evidence of guilty can oftentimes be sufficient to sustain a conviction despite some prosecutorial misconduct." *Slagle v. Bagley*, 457 F.3d 501, 527 (6th Cir. 2006) (quoting *Bates v. Bell*, 402 F.3d 635, 648–49 (6th Cir. 2005)). Even outside of the 404(b) text message evidence, the jury had sufficient information to find Zulawski guilty of the charged crime. They heard the

---

[6] The Court found that the text messages were admissible under Fed. R. Evid. 404(b). But the Court, exercising its power under Fed. R. Evid. 403, conditioned the messages' admission out of a concern that the entire text message threads would be extremely prejudicial to the Defendant. *See* [R. 155 at 122–124].

testimony of Detective D'Hondt. [R. 155 at 161–206; R. 156 at 222–23.] They heard the testimony of Jeff Fogg of the Attorney General's Department of Criminal Investigations, who first interviewed Zulawski and took his statement. [*Id.* at 208–225]. They heard testimony from Detective Matthew Hedden that Zulawski used his primary phone[7] to converse with others on the dates in question looking for sexual meetups before he began speaking with D'Hondt. [R. 156 at 79–108]. This testimony had nothing to do with the challenged cage phone conversations and aptly captured the Government's theory: that Zulawski was not trying to rescue children from bad situations but rather was actively searching for sexual escapades with strangers around the time he began speaking with D'Hondt about engaging in criminal sexual activity.

Zulawski cannot show under *Strickland* that Lawson's purported "failures" to object to "prosecutorial misconduct" fell below the reasonable standard of effective representation or that but for this failure the result of his trial would have been different. Where both sides contested the issue of intent, the Court agrees with Judge Ingram's conclusion that "it was not improper for the government to focus the jury's attention on collateral evidence of intent," particularly where such evidence was properly admitted under Rule 404(b), as modified by the Court's Rule 403 bench conference ruling. [R. 196 at 25].

Zulawski also faults Lawson for not objecting to the prosecutor's references to the popular TV show "To Catch a Predator."[8] [R. 172-1 at 13]. Zulawski argues that "the Sixth Circuit previously found such comparisons prejudicial when the government compared defendants and their crimes to notorious cases and flagitious figures." [*Id.*] He cites two cases:

---

[7] I.e., not the "cage phone" located at his residence.

[8] "To Catch a Predator" aired on NBC from 2004 until 2007. Hosted by Chris Hansen, the premise of the show involved sting operations luring men to a home where they thought they were meeting minors for sex, but were instead confronted on camera by Hansen and arrested by law enforcement.

*Martin v. Parker*, 11 F.3d 613 (6th Cir. 1993), and *United States v. Steinkoetter*, 633 F.2d 719 (6th Cir. 1980). The Court summarizes the holdings of these cases below before turning to the references that occurred in this case.

In *Martin v. Parker*, the Sixth Circuit reversed a district court's habeas petition denial on the basis of prosecutorial misconduct. 11 F.3d at 617. There, the prosecutor "exhibited a propensity for highly prejudicial comments throughout the trial," including by "directly compar[ing] Martin to Adolf Hitler" and by "inquir[ing] into the genetics involved in raising Martin's pure-bred German Shepherds, suggesting that Martin applied the same genetic and purity standards to his own mixed-race family." *Id.* at 615. Prior to trial, defense counsel filed a motion in limine to suppress the admission of other acts testimony. *Id.* The judge ordered the prosecutor not to introduce such evidence without the court's approval, but the prosecutor ignored the court order and referenced the inflammatory other acts evidence in the government's opening statement. *Id.* The Sixth Circuit found that "the prosecutor's improper comments and his repeated references, despite the trial judge's warning, to Martin's prior bad acts combined to deny Martin his right to a fair trial." *Id.* at 617.

In *United States v. Steinkoetter*, the Sixth Circuit vacated the conviction of the defendant on the basis of prosecutorial misconduct. 633 F.2d at 721. The case involved two prior trials for the same conduct: the planned killing of Steinkoetter's stepmother through the use of a bomb. The Sixth Circuit reversed the judgment and sentence of the first trial on the basis of prosecutorial misconduct. *Id.* at 720; *see also United States v. Steinkoetter*, 593 F.2d 747 (6th Cir. 1979). The Sixth Circuit then reversed the judgment and sentence of the second trial on the same basis, taking issue with the prosecutor's prejudicial misconduct in the closing argument where he directly compared the defendant to Pontius Pilate and Judas Iscariot. *Id.* at 720.

The comments here, by comparison, are considerably less prejudicial. The prosecutor referenced the show just twice. First, during voir dire:

> And then I think a number of you certainly have been, about close to my age, **you might remember a show some years ago, "To Catch a Predator", where there would be sort of like an undercover operation**, and someone would either pretend to be a minor or usually it'd be, you know, someone of age, and a suspect would then show up at that person's residence usually, and they've have the TV cameras rollin,' and, you know, some person would come out and talk to them. How many of you have seen that show? A number of you? Quite a few. Okay. This is not that. We don't have anybody -- no TV cameras rolling. But in essence, this was what you call an undercover operation of which Detective D'Hondt had posted an ad on Craigslist, and then there was, you know, response, and ultimately, the defendant had traveled and was then arrested.
>
> **Do any of you feel like there is something wrong with law enforcement using something like that**, in other words, undercover operation where she was putting herself out there who was a mother willing to have her children be involved in sexual activity? And in fact, there were no children; she didn't have any children to be allowed to be sexually abused. That's why it's attempted online enticement. **Does anybody feel like that's not the type of law enforcement operation that should be approved or permitted?** That's all I have. Thank you.

 [R. 155 at 101–02] (emphasis added). Then, the prosecutor referenced the show in his opening argument: "Ladies and gentlemen of the jury. You recall my question of the -- during the voir dire about remember the show 'To Catch a Predator.' **Well, you are going to sort of get a blow-by-blow description of such an undercover operation**, but without the cameras, without that being on television. This is real life. This is what happened." [*Id.* at 148]. In context, these comments are distinguishable from the inflammatory rhetoric employed by the prosecutors in *Martin* and *Steinkoetter*.

The voir dire comment is particularly distinguishable because it came in the context of jury selection. Voir dire "enables the court to select an impartial jury and assists counsel in

31

exercising peremptory challenges." *United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991)). "The conduct of voir dire necessarily is committed to the sound discretion of the trial court because the determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *Id.* (citation modified). The mention of the TV show was to provide a frame of reference for the jury pool to anchor the context of the prosecutor's ultimate question: whether they approved of the use of sting operations. Asking the prospective jury pool whether they objected to such a tactic is entirely appropriate, and not unlike other questions routinely used to ferret out potential biases.[9]

The statement in opening argument is distinguishable from *Martin* and *Steinkoetter*. The purpose of an opening statement "is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring)). Here, the prosecutor mentioned the show as a reference point to prepare the jury for the narrative of the case. Police arrested Zulawski after the successful conclusion of a sting operation. For a layperson, a reference to a TV show covering sting operations could help them understand fully the case before them that employed such a tactic. At no point did the prosecutor call Zulawski a "predator." This contrasts to both *Martin* and *Steinkoetter* where the government referred to the defendants directly as Adolf Hitler, in *Martin*, and as biblical villains Pontius Pilate and Judas Iscariot, in *Steinkoetter*.

---

[9] For example, in drug cases, it is routine for counsel to ask whether any members of the jury pool have struggled with addiction themselves, whether they have relatives suffering under addiction, or whether addiction or drug users have impacted their lives in other ways.

Zulawski is unable to meet either prong of the ineffective assistance of counsel framework outlined in *Strickland*. As to any deficiency, the Court already determined that no prosecutorial misconduct occurred, ergo there was no basis for Lawson to raise an objection. Even if there were, two mild references to the TV show—neither of which referenced Zulawski as a "predator"—fail to reach the high standard required for a showing of prejudice. The Court therefore overrules Zulawski's eighth objection.

### D

The Court turns to Judge Ingram's final recommendation that no Certificate of Appealability issue. [R. 196 at 38–39]. Zulawski did not address this proposed finding in his objections. In the absence of an objection, the Court reviews Judge Ingram's proposed finding for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note to 1983 Addition. Upon review, the Court is satisfied that Judge Ingram's conclusion is legally sound. The Court thus adopts Judge Ingram's finding that no Certificate of Appealability shall issue.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Zulawski's objections to Judge Ingram's Recommended Disposition are **OVERRULED**.

2. Judge Ingram's Recommended Disposition **[R. 196]** is **ADOPTED** as and for the Opinion of the Court.

3. Zulawski's Motion to Vacate **[R. 172]** is **DENIED**.

4. No Certificate of Appealability will issue.

This 14th day of April, 2026.

Gregory F. Van Tatenhove
United States District Judge